# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

January 10, 2020

**BY ECF**

Hon. Lorna G. Schofield, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

           **Re:**    *Santos, et al. v. Wholesome Factory Inc., et al.*
                   *Case No. 19-CV-5335 (LGS) (KNF)*

Dear Judge Schofield,

      We are counsel to the plaintiffs in the above-referenced matter, and jointly submit this letter together with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this dispute, which was negotiated at arm's length between experienced counsel and with the assistance of a court-appointed mediator during a mediation conducted on November 26, 2019.

      **I.**    ***The Need for the Court's Approval of the Agreement***

      As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Lorna G. Schofield, U.S.D.J.
January 10, 2020
Page 2

## II.  Plaintiffs' Claims for Unpaid Wages

Plaintiffs assert causes of action pursuant to the FLSA and New York Labor Law, seeking the recovery of, *inter alia*, unpaid overtime compensation. The plaintiffs consist of four (4) former employees of the defendants' market who were hired to work as kitchen helpers/food preparers, cooks, porters, stock persons, and produce handlers/packers. The following is a brief synopsis as to each plaintiff's claim:

- Misael Cruz Santos

Mr. Santos alleges working for the defendants from in or about June 2017 until in or about April 2019 as a cook.[1] Mr. Santos alleges working six (6) days per week and, although his work shift fluctuated slightly each week, he alleges working approximately fifty-nine (59) hours per week. Defendants' time records corroborate that Mr. Santos worked, on average, in excess of fifty-two (52) hours per week.

With respect to his pay, Mr. Santos alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

> - June 2017 – December 2017: $680/week
> - January 2018 – May 2018: $700/week
> - June 2018 – April 2019: $730/week

- Juan Munoz

Mr. Munoz alleges working for the defendants from in or about August 2016 until in or about March 2019 as a cook.[2] Mr. Munoz alleges working five (5) days per week and, although his work shift fluctuated slightly each week, he alleges working approximately forty-five (45) hours per week. Defendants' time records corroborate that Mr. Munoz worked, on average, slightly more than forty-five (45) hours per week.

With respect to his pay, Mr. Munoz alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

> - August 2016 – May 2018: $700/week
> - June 2018 – March 2019: $800/week

---

[1] Neither at the time of his hire, nor anytime thereafter, did the defendants provide Mr. Santos with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay.
[2] Neither at the time of his hire, nor anytime thereafter, did the defendants provide Mr. Munoz with a wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay.

Hon. Lorna G. Schofield, U.S.D.J.
January 10, 2020
Page 3

- <u>Braulio Reyes</u>

Mr. Reyes alleges working for the defendants from in or about November 2012 until in or about April 2019 as a food preparer/kitchen helper, stock person, and porter.[3] Mr. Reyes alleges working seven (7) days per week and, although his work shift fluctuated slightly each week, he alleges working eleven (11) hours per day, for a total of approximately seventy-seven (77) hours per week. Defendants' time records corroborate that Mr. Reyes typically worked between seventy-seven (77) and seventy-nine (79) hours per week.

With respect to his pay, Mr. Reyes alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

- June 2013 – December 2014: $836/week[4]
- January 2015 – December 2015: $850/week
- January 2016 – December 2016: $860/week
- January 2017 – December 2017: $920/week
- January 2018 – December 2018: $950/week
- January 2019 – April 2019: $1,000/week

- <u>Jose Priego</u>

Mr. Priego alleges working for the defendants from in or about July 2015 until in or about April 2019 as a food preparer/kitchen helper, stock person, and produce handler/packer.[5] Mr. Priego alleges working six (6) days per week and, although his work shift fluctuated slightly each week, he alleges working between fifty (50) and fifty-four (54) hours per week. Defendants' time records corroborate that Mr. Priego typically worked between fifty-four (54) and sixty (60) hours per week until 2018, and around fifty (50) hours in 2019.

With respect to his pay, Mr. Priego alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

- July 2015 – December 2016: $650/week
- January 2017 – December 2017: $674/week
- January 2018 – December 2018: $744/week
- January 2019 – April 2019: $750/week

---

[3] Neither at the time of his hire, nor anytime thereafter, did the defendants provide Mr. Reyes with a wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay.
[4] The relevant limitations period for Mr. Reyes's claim begins in June 2013.
[5] Neither at the time of his hire, nor anytime thereafter, did the defendants provide Mr. Priego with a wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay.

Hon. Lorna G. Schofield, U.S.D.J.
January 10, 2020
Page 4

### III.    Defendants' Position

Defendants contest a number of facts alleged by the plaintiffs, the most critical of which include the (a) length of each plaintiff's period of employment, and (b) the manner and method by which the plaintiffs were paid.

Defendants dispute that the plaintiffs worked as long as each allege. For instance, they contend that plaintiffs Santos and Reyes ended their employment in March 2019, not April 2019 as alleged; plaintiff Munoz ended his employment in December 2018, not April 2019 as alleged; and plaintiff Priego started his employment in July 2016, not July 2015 as alleged, and ended his employment in March 2019, not April 2019 as alleged. If proven correct, such a reduction in their employment terms would have reduced plaintiffs' potential recovery.

Significantly, in regard to plaintiffs' pay, the defendants contend that plaintiffs were paid on an hourly basis and not on a salary basis, and further that they paid plaintiffs above the statutory minimum wage at all times, and at time and one-half their regular rate of pay for all hours worked in excess of forty (40). Of critical importance, the defendants further note that the plaintiffs signed payroll receipts, which they contend state the number of hours the plaintiffs worked each week, their hourly rate of pay, deductions, and net wages, thereby verifying that the number of hours and rates of pay stated thereon were accurate.

### IV.    The Agreement is Fair and Reasonable

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of extensive arm's length negotiations. In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F. 2d at 1354)).

Here, this settlement was reached during mediation before the Court-appointed mediator, Allen Gettner, Esq., and as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $158,500.00 to resolve all of plaintiffs' wage and hour claims against the defendants, which is to be paid over the course of twenty-one (21) monthly installments commencing within ten (10) days of the Court approving the terms of the Agreement. Based on length of

Hon. Lorna G. Schofield, U.S.D.J.
January 10, 2020
Page 5

employment, hours worked, and rates paid, each of the plaintiffs will be receiving a *pro rata* share of the settlement in the amounts more fully set forth in the Agreement.

Plaintiffs calculated that had they prevailed at trial on *all* of their claims, they could have recovered approximately $110,000 in unpaid wages, with an equal amount in liquidated damages, together with statutory damages for the defendants' alleged failure to provide wage notices and wage statements. However, as discussed below, we believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiffs' claims.

While the parties are generally in agreement as to the number of hours that plaintiffs worked each week, a significant dispute exists as to the amount and manner in which plaintiffs were paid. During discovery, the defendants produced voluminous wage and hour records. The records corroborate plaintiffs' contentions that they regularly worked more than forty (40) hours each week. The critical issue in this case, and the primary factual dispute, directly relates to the weekly pay receipts. Plaintiffs' position is that the defendants required them to sign the receipts at the end of each week in order to receive their cash wages. Plaintiffs admit to signing the receipts each week. What is in dispute is whether the information in the receipts is a true and accurate reflection of the amount of pay actually received by plaintiffs and the manner of payment.

According to the plaintiffs, they were actually paid on a salary basis straight time for all hours worked. However, the pay receipts indicate that the plaintiffs were paid on an hourly basis at a rate above the statutory minimum wage, and at time one-half their regular rate of pay for each overtime hour worked. Defendants contend that this information was on the receipt at the time the plaintiffs signed them, and demonstrates that they were paid correctly. Plaintiffs vehemently deny that the information correctly demonstrates how they were actually paid, or the amount that they actually received.

In support of their position, the plaintiffs note that records are deficient for a number of reasons. First, the records fail to recognize any fluctuation in the plaintiffs' work schedules each week. Indeed, when comparing plaintiffs' punch cards with the payroll records for the same weeks, the number of hours allegedly credited to the plaintiffs and paid for by the defendants does not match the number of hours reflected on the punch clock record. Second, on many occasions (although not every week), the amounts allegedly paid to plaintiffs as shown on the receipts are inaccurate. In other words, one calculates the alleged hourly rates paid to the plaintiffs by the number of regular hours (up to 40) worked, and the alleged overtime rates paid to the plaintiffs by the number of overtime hours credited to the plaintiffs, the defendants' own mathematical calculation is wrong – meaning that the wages allegedly paid to the plaintiffs as shown on the receipts actually do not add up correctly if we assume that the hours and rates are true. Thus, while plaintiffs believe they would have been able to prove that the defendants were actually paying plaintiffs a set dollar amount each for all hours worked regardless of the number of hours worked, plaintiffs recognized that signed pay receipts depicting a different scenario posed a significant litigation risk because if a jury believed the documents to be accurate, it would have almost extinguished plaintiffs' potential recovery.

Hon. Lorna G. Schofield, U.S.D.J.
January 10, 2020
Page 6

Second, a dispute exists as to whether plaintiffs are entitled to a "spread of hours" premium for each day in which their work shift exceeded ten (10) hours. Payment of "spread of hours" premiums under Section 146-1.6 of the New York Labor Law Regulations applies only to restaurants (and all-year hotels). Relying upon a 2014 New York State Labor Standards' Field Investigator's Manual, it is the defendants' position that the market does not qualify as a "restaurant" under the Regulations primarily because it does not provide facilities for on-premises consumption of food and, thus, are more akin to a grocery store or other similar retail establishments to which Section 146-1.6 does not apply.

Third, a dispute exists as to whether plaintiffs are entitled to statutory damages for the defendants' alleged failure to provide plaintiffs with weekly wage statements. It is the defendants' position that the plaintiffs signed pay receipts constitutes a proper wage statement. Plaintiffs dispute that because the receipts were not provided to the plaintiffs each week but were retained solely by the defendants, a fact that the defendants dispute. If a trier of fact would have found in the defendants' favor on this issue, it would have further reduced plaintiffs' potential recovery by another approximately $20,000.00.

By settling now, plaintiffs receive virtually all of their calculated underlying unpaid wages even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiffs during the mediation, they made the decision to accept the defendants' offer.

### V.    *Application for Attorneys' Fees*

"Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorneys' fees." *Babayeva v. Halstead Managing Corp.*, No. 16 Civ. 3794, 2018 U.S. Dist. LEXIS 195229, at *9 (S.D.N.Y. Nov. 15, 2018) (*quoting Andrews v. City of New York*, 118 F. Supp. 3d 630, 634-35 (S.D.N.Y. 2015)).

In taking on and prosecuting this matter, plaintiffs' counsel took on considerable risk. Moreover, each of the plaintiffs in this matter retained counsel on a 33 1/3% contingency basis, and spend zero out of pocket. Plaintiffs' counsel fronted all costs. This posed a significant risk for plaintiffs' counsel because a distinct possibility existed that although plaintiffs could successfully prove liability, they still may have ultimately been unable to collect any money despite years of litigation and expense. A distinct possibility also existed that certain or most of the defendants' defenses could have prevailed, rendering little to no compensation to plaintiffs' counsel after reviewing and analyzing voluminous discovery and expending hundreds of hours of work and thousands of dollars in expenses. And, even after approval of settlement in this matter, plaintiffs' counsel will continue expend time on the matter over the course of the next twenty-one (21) months monitoring the matter to ensure payment is made timely and the plaintiffs receive their monthly installment payments. This is additional time and money for which plaintiffs' counsel will not seek or receive compensation. There remains the possibility

Hon. Lorna G. Schofield, U.S.D.J.
January 10, 2020
Page 7

of default, which may cause even further fees and costs to be expended by plaintiffs' counsel in the future.

The amount requested in attorneys' fees is $52,828. In an effort to get this matter resolved, plaintiffs' attorneys' have agreed to waive all costs expended. A contingency fee is presumptively valid where 'the proposed fee is exactly one-third of the net settlement amount, which is routinely approved under the percentage method' in this District, 'particularly where it is pursuant to a previously negotiated settlement agreement.'" *Babayeva*, 2018 U.S. Dist. LEXIS 195229, at *10 (*quoting Yunjian Lin v. Grand Sichuan 74 St. Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018)). As such, the amount requested here, as one-third of the gross settlement amount (without deduction for costs) is presumptively valid and, thus, should be approved.

In evaluating the reasonableness of a fee award, the court must also find the fee reasonable when compared to what would be awarded under the lodestar method. *Babayeva*, 2018 U.S. Dist. LEXIS 195229, at *11 (*quoting Zhi Li Zhong v. Rockledge Bus Tour Inc.*, No. 18 Civ. 454, 2018 U.S. Dist. LEXIS 131829, at *10 (S.D.N.Y. Aug. 6, 2018)). In this matter, one attorney and two paralegals worked on the case for a total of 141.1 hours. When applying the billing rates, the total attorneys' fee calculated is $44,830.

Accordingly, when comparing the attorneys' fees requested in this matter to the lodestar, the lodestar multiplier equals 1.18. This lodestar multiplier is well within the multiple commonly found to be reasonable by courts in this District. *See Babayeva*, 2018 U.S. Dist. LEXIS 195229, at *13 (*citing Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)) (awarding a fee that represented a 2.28 multiplier of modified lodestar calculation and noting that '[a] multiplier near 2 compensates [plaintiff's counsel] appropriately'). *See also Velandia v. Serendipity 3, Inc.*, No. 16 Civ. 1799, 2018 U.S. Dist. LEXIS 116594, at *14-15 (S.D.N.Y. July 12, 2018) (awarding lodestar multiplier of 1.2 in FLSA settlement); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2015 U.S. Dist. LEXIS 85873, at *25-26 (S.D.N.Y. July 1, 2015) (awarding multiplier of 1.68 of the calculated lodestar in FLSA settlement). Consequently, counsel respectfully asserts that its fee is reasonable.

Additionally, plaintiffs' counsel's qualifications support Court approval of the full fee requested. I am a founding partner and member of Cilenti & Cooper, PLLC (the "Firm"). I graduated from Pace University School of Law with a J.D. Degree in 1997, where I was an Editor of the Pace International Law Review. In the almost twenty-three (23) years since being admitted to practice, I have litigated a multitude of cases from inception through disposition, including trial. I practice in the New York State Supreme Court, the Appellate Divisions of the New York Supreme Court, and the Federal District Courts for the Southern and Eastern Districts of New York, as well as the Federal District Courts of New Jersey. From the Firm's inception, I have handled exclusively employment matters, with the vast majority of the cases relating to wage and hour cases, including many collective and/or class actions with multiple plaintiffs. Since 2009, the Firm has handled over 1,000 wage and hour cases in New York and New Jersey.

Hon. Lorna G. Schofield, U.S.D.J.
January 10, 2020
Page 8

   My billing rate on this matter is $400 per hour, which has been routinely approved as reasonable by the Courts within this District. *See Chirix, et al. v. Lupe's East L.A. Kitchen, Inc., et al.,* No. 18 Civ. 819 (DCF) (S.D.N.Y. July 19, 2019); *Castaneda, et al. v. Natural Crop Inc., et al.,* No. 17 Civ. 4258 (PK) (E.D.N.Y. Jan. 8, 2019); *Garcia, et al. v. Good For Life by 81 Inc., et al.,* No. 17 Civ. 7228 (BCM) (S.D.N.Y. July 12, 2018); *Rescalvo v. BTB Events & Celebrations Inc.,* No. 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli,* No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.,* No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.,* No. 15 Civ. 7443 (DCF) (S.D.N.Y. 2016). For these reasons, it is requested that my hourly rate for this matter similarly be approved at $400 per hour.

   Given the significant risks undertaken by plaintiffs' counsel, and also the fact that the Firm vigorously and diligently litigated this action to a fair and reasonable settlement, for which continued uncompensated work and oversight will naturally have to continue until payment in full is received, counsel respectfully requests that its fees be approved.

   For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

   We thank the Court for its continued attention to this matter.

              Respectfully submitted,

              Justin Cilenti

cc: Sean Kwak, Esq. (by ECF)